UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JAVIER PITA and VIDA PITA,        Case No: 13-CV-23682-MOORE/MCALILEY

   Plaintiff,

vs.

DENNIS FOGELGREN,
ARMANDO SOTERO,
TODD SCOTT and
CITY OF NORTH MIAMI BEACH,

   Defendants.
_____/

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE [DE 105] IN OPPOSITION TO THEIR MOTION LIMIT THE TESTIMONY OF EXPERT WITNESS ROY BEDARD [DE 84]

COME NOW, the Defendants, DENNIS FOGELGREN, ARMANDO SOTERO, TODD SCOTT and the CITY OF NORTH MIAMI BEACH, by and through their undersigned attorneys, and file this their Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Limit the Testimony of Expert Witness Roy Bedard and, in support thereof, state as follows:

Defendants seek to not only limit Mr. Bedard's expert witness testimony, but request that the Court instruct Mr. Bedard and Plaintiffs' counsel on the parameters of that testimony. As set forth in their Motion in Limine, and discussed below, many of Mr. Bedard's opinions go beyond his expertise as a police practices expert and are otherwise inadmissible. Without a limiting instruction, Defendants anticipate that Plaintiffs' counsel

1

and expert will take a kitchen-sink approach and try to render as many "opinions" on as many issues as possible, notwithstanding that the testimony is irrelevant, inappropriate "expert" testimony which does not assist the trier of fact in any way.

While Defendants' do not challenge Mr. Bedard's qualifications as a police-practices expert in a general sense, they do not, as characterized by the Plaintiffs, concede that Mr. Bedard is either "exceedingly qualified" or that he possesses "superior qualifications." [DE 105, pp. 2, 18] The ultimate question before the Court is whether Mr. Bedard's expert opinion testimony would aid the trier in fact. Viewing his testimony from this perspective, it is easy to see that his stated opinions are subjective and unreliable and not only fail to assist the jury, but invade the province of the jury.

Under Rule 704, Federal Rules of Evidence, an expert may give an opinion which embraces an ultimate issue to be decided by the trier of fact. However, the issue embraced must be a factual one. *See* Daugherty, 2013 WL 501670 at *3. The Advisory Committee Notes specifically warn that the rule "does not lower the bar so as to admit all opinions," because "[u]nder Rule 701 and 702, opinions must be helpful to the trier of fact and Rule 403 provides for exclusion of evidence which wastes time." Fed. R. Evid. 704. Stated another way, "the expert's opinion evidence must be helpful to the trier of fact, its probative value must outweigh the danger of unfair prejudice, it must not waste time or needlessly present cumulative evidence, and it may not merely tell the jury what result to reach." Mutafis v. Markel, 2013 WL 119464 *3 (E.D. Mich. 2013).

2

Applying the above rules and standards, courts have permitted qualified experts to testify about discrete police-practice issues when their testimony will aid the trier of fact. As a police practices expert, Mr. Bedard may be qualified to opine on the generally prevailing accepted standards for police practice and procedure, so long as they are relevant to the issue in the case. *See* Daugherty, 2013 WL 501670 at *4; Mutafis, supra. Such expert testimony might be helpful to the jury in explaining "the range of force that could be used and the propriety of using that level force in a particular set of circumstances." *See* Desai v. Farmer, 2014 WL 54735645 *5 (M.D. Fla. Oct. 28, 2014)(citing *e.g.* Champion v. Outlook Nashville, Inc., 380 F. 3d 893, 908-09 (6th Cir. 2004)). Most courts, including the Eleventh Circuit in Desai, and also in Daugherty, apply the Champion standard which states that a police-practices expert can testify concerning specific police procedures and practices relevant to the case and opine on recognized police standards governing excessive force. Champion, 380 F. 3d at 908.

In their Response, Plaintiffs attempt to characterize Mr. Bedard's opinions (pp. 3-5) as being within these prevailing standards. However, as evidenced by his report, affidavit, and deposition testimony, many of Mr. Bedard's opinions are far from that. In fact, Mr. Bedard's actual opinions are so intertwined with inadmissible rhetoric and hyperbole, that it is difficult, if not impossible, to extract the admissible opinions which he is qualified to present to the jury. This issue was is squarely addressed in Daugherty v. Graves, 2013 WL 5017670 (E.D. Tenn. 2013) which resulted in many of Mr. Bedard's opinions being

3

stricken in that case.

Mr. Bedard himself candidly admitted that much of what he does is "speculation," and that his opinions are based on "20/20 hindsight," which is the improper legal standard from which to determine whether the force used by Officers Fogelgren and Sotero was reasonable under the circumstances, and whether they violated Pita's constitutional rights. *See* Bedard Dep. pp. 128, 181-82; *see also* Graham v. Connor, 490 U.S. 386, 396 (1989). It is without question that a police practices expert cannot offer opinions that:

(1) are replete with legal argument and conclusions of law;

(2) are based on speculation and conjecture as to the Officers' subjective intent, their state of mind, their credibility, and the reasonableness of their actions;

(3) analyze and interpret video images; and

(4) fall outside of his area of expertise.

As described more fully below, such opinions are improper and comprise the categories of testimony the Defendants seek to preclude.

**1.     Legal Argument and Conclusions of Law**

As discussed above, while it is acceptable for a police practices expert to opine about the appropriate standards and policies applicable to the police officers involved, the expert cannot provide legal conclusions to the jury, i.e., whether a particular Defendant's actions were, or were not, reasonable under the given circumstances. *See e.g.* Alvarado v. Oakland Co., 809 F. Supp. 2d 680, 690-91 (E.D. Mich. 2011)(expert may testify regarding nationally recognized police standards governing the use of excessive force, as

4

well as the specific departmental excessive force guidelines, but may not opine as to whether the officer's conduct was unreasonable under those guidelines or practices); Norman v. City of Lorain, Ohio, 2006 WL 5249725 *3 (N.D. Ohio 2006)(expert may testify concerning proper procedures to be followed in the situation facing the officer, but may not testify that the force used by the officer was unreasonable or unnecessary or otherwise express legal conclusions); DeMerrell v. City of Cheboygan, 206 Fed. Appx. 418, 426 (6th Cir. 2006)(expert's conclusions that it was "objectively unreasonable" for the officer to shoot the suspect; that a reasonable officer on the scene would not have concluded that there existed probable cause that the suspect posed a threat to the officers; and the use of deadly force was improper and unnecessary, improper legal conclusions). The case cited by the Plaintiffs, Richman v. Sheahan, 415 F Supp. 2d at 947, which suggests that an expert can testify as to such legal conclusions, relied on the Eleventh Circuit case Parker v. Williams, 855 F. 2d 763 (11th Cir. 1988). However, Parker was withdrawn and superseded, 862 F. 2d 1471 (11th Cir. 1989), and, therefore, is no longer good law.

### 2. Speculation and Conjecture/Credibility/Subjective Intent/State of Mind

Experts also cannot make credibility determinations, which are for the jury. *See e.g.* Daugherty, supra; Elex v. Glirbas, 2014 WL 2462811 *7 (D. Minn. May, 29, 2014)(credibility determinations are within the exclusive province of the jury and a jury is capable of making such determinations without the aid of an expert). "There is a critical

distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another [which Mr. Bedard does in this case] and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not." Richman v. Sheahan, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006)

By way of example, Plaintiffs state that Mr. Bedard can opine on training and expectations placed on officers to manage their emotions when they interact with citizens. Daugherty, 2013 WL 501670 *4; citing Bedard Aff. ¶¶ 65-67, 72-73, 85. However, Mr. Bedard's opinions do not stop with the standards applicable to the Defendant Officers. Instead, Mr. Bedard goes on to opine that the Defendants in this case interpreted Pita's actions "as a sign of gross disrespect to them and might likely arouse their anger along with punitive and retaliatory conduct." Bedard Aff. ¶¶70-71. Further, Mr. Bedard's opinions about the "state of mind of the officers as being callous and uncaring," is improper. These are not opinions based on the facts of this case. Rather, they are comments on the Officers' credibility and state of mind which are based on pure speculation. Mr. Bedard has no idea what was in these Officers' minds at the time of the incidents giving rise to this lawsuit, and he should not be permitted to speculate or infer as to why they took the actions they did. Neither should he be able to testify as to whether the Defendants' actions were "punitive" or "retaliatory," as such assertions constitute legal conclusions. This testimony is outside the parameters of Mr. Bedard's "expertise" and not

6

a proper issue for any expert, much less a police practices expert. On a related note, while Mr. Bedard can testify as to the prevailing police practices and standards, as set forth above, he also should not be permitted to opine as to the specific training these particular officers received without any personal knowledge of that information.

Plaintiffs also maintain that Mr. Bedard should be permitted to testify as to the "stacking of charges" against Pita, and other evidence, including filing "false" police reports, "destroyed" video, lack of dash-cam video in patrol cars (all of which is irrelevant to the actual claims of excessive force that occurred at the police station), and the Officers' conduct after the incident, as evidence of a "cover-up" and justification for their use of excessive force against Pita.[1]

This "conspiracy" theory or claim of a "cover-up" has no place in this jury trial, and Plaintiffs should not be permitted to introduce such prejudicial evidence through the expert testimony of Mr. Bedard or through their counsel.  There are no pending claims for conspiracy, false arrest or malicious prosecution.  *See* Bedard Dep. p. 86 (conceding that there is no conspiracy claim); [DE 1, Complaint].[2]  Notwithstanding that fact, Mr. Bedard intends to opine that the Officers were "conspiring" or "collaborating." *See id*. at 86-87,

---

[1] Plaintiffs claims of a "cover-up" or conspiracy is a recurring theme that runs throughout their Responses to Defendants' Motions in Limine and Defendants anticipate Plaintiffs will seek to make this issue a prominent feature at trial. [DE 106, 107]

[2] The Complaint alleges that both Officer Fogelgren and Officer Sotero participated in the push of Pita into the holding cell.  No mention is made of Officer Sotero's failure to act as a collaboration.  Bedard Dep. pp. 87-88.

7

89. This is a perfect example of Mr. Bedard opining on facts not in evidence, and creating theories of liability that have not been pled by the Plaintiffs. Moreover, this is another example of Plaintiffs' attempting to create issues of a "cover-up" where there is no evidence to support such a theory.

As for the stacking of charges against Pita, there is no evidence to support Mr. Bedard's opinion regarding this claim or that such charges were "dubious"and brought for the sole purpose of establishing a cover for the injuries sustained by Pita. *See* Bedard Dep. pp. 147-49; Bedard Report, p. 15. Pita admits that he spit at the Officers, and, as such, the Officers were in fact justified in bringing charges against him. The fact that these criminal charges were later dropped has no bearing on the fact that a battery did occur (as the Plaintiff admits to spitting at the officers and there is no pending false arrest or malicious prosecution claim). As evidence that Mr. Bedard is again creating issues where there are none, Mr. Bedard concedes that the stacking of charges really amounts to a false arrest allegation (which, once again, is not a claim the Plaintiffs sought to pursue in this case). This information is not in any way relevant to an excessive force claim. Id.

The case law the Plaintiffs cite in support of their argument that they should be able to introduce evidence of a "cover up" are easily distinguishable and should not be given weight by this court. Not only have the Plaintiffs taken the holdings out of context, but the underlying charges in these cases are substantially different from those in this case.[3]

---

[3] Duggan v. Village of Albany, No. CS-08-81, 2009 WL 4884201 (S.D. Oh. Dec. 15, 2009) (court only addressed whether plaintiff could engage in *discovery* of alleged sham

In each of those cases, there was some type of conspiracy, false arrest, or malicious prosecution claim, which where such evidence might, arguably, be relevant. Such is not the case here.

Mr. Bedard's opinions on this point are based on pure speculation and conjecture and serve only to inflame the passions of the jury.[4] As such, these opinions should be precluded. In addition, Defendants respectfully request that, at a very minimum, Plaintiffs' counsel and experts be barred from using the unduly prejudicial terms "cover-up" and "conspiracy," particularly since no such claims or allegations have been pled. *See e.g.*, Townsend v. Benya, 287 F. Supp. 2d 868, 877 (N.D. Ill. 2003); Fed. R. Evid. 403.

### 3.  Interpreting Video Images that the Jury Itself Can Review

Much of Mr. Bedard's testimony focuses upon his advocacy-based interpretation of the video from the police station. Mr. Bedard has no special expertise in interpreting

---

investigation, did not discuss admissibility at trial); Riley v. Hessenflow, No. 11-04253-CV-C-NKL, 2013 WL 139650 (W.D. Mo. Jan. 10, 2013)(the allegations of the complaint involved claims of fabricating evidence and conspiracy); Bruce v. City of Chicago, No. 09-C-4837, 2011 WL 3471074 (N.D. Ill. Jul. 29, 2011)(involving count of unreasonable seizure and claims of false arrest and malicious prosecution); Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2006)(case involving conspiracy); Perez v. Miami-Dade County, 168 Fed. Appx. 338 (11th Cir. 2006)(case involving failure to investigate and systemic practice of covering up incidents by department); Piserchia v. Bergen County Police Dept., 2013 WL 4436183 (D. N.J. Aug. 15, 2013)(case involving conspiracy by police officers). No such claims have been pled by the Pitas in this case. Even Richman v. Burgeson, 2008 WL 2567132 *8 (N.D. Ill. 2008) can be distinguished where there are no facts or legal authority in that decision which can be used to support Plaintiffs' claim in this case that evidence of a cover-up should be admissible.

[4] "[T]his is often known in the world of police of stacking charges and it's almost always dubious in its design, so I can it's almost always dubious and leave it to the trier of fact and figure out whether this was or wasn't." Bedard Dep. pp. 151.

video images and his interpretation of the video surveillance does not aid the jury, but rather, supplants the jury. See Elex, supra (and cases cited therein)(analyzing video images is within the jury's knowledge and ability; trial court properly excluded expert's testimony about video images).

**4.   Area of Expertise**

As explained above, a police practices expert is permitted to opine on those limited issues upon which he or she has expertise that can help enlighten the jury. Mr. Bedard's thoughts on how he can assist the jury are much broader than the law allows, and this Court should also limit his opinions to the area of his true expertise.  He should not be permitted to opine on the "biomechanical effect" of Officer Fogelgren's pushing Pita or to speculate as to the proximate cause of Pita's injury. *See* Berner v. Carnival Corp., 632 F. Supp. 2d 1208 (S.D. Fla. 2009)(biomechanical engineers are qualified to testify about how forces may affect or injure an individual).

Accordingly, Defendants respectfully request that this Court strike and/or limit many of Mr. Bedard's opinions, and also provide an instruction to both Mr. Bedard and Plaintiffs' counsel as to parameters of that testimony including, but not limited to, an instruction that they are not to use the prejudicial terms, "cover-up" or "conspiracy."

Dated: November 17, 2014    Respectfully submitted,

*/s/ Eugene K. Pettis*
FBN: 508454
Email: Service@hpslegal.com
HALICZER PETTIS & SCHWAMM, P.A.
One Financial Plaza, Seventh Floor
100 SE 3rd Avenue
Fort Lauderdale, FL 33394
*Attorneys for Defendants*
Telephone:  954-523-9922
Facsimile:   954-522-2512

Certificate of Service

I HEREBY CERTIFY that on the 17th day of November, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Eugene K. Pettis*
EUGENE K. PETTIS

**SERVICE LIST**

Alexander Rundlet, Esq.
Barzee Flores
Courthouse Center, Penthouse One
40 N.W. 3rd Street
Miami, FL 33128
*Attorneys for Plaintiffs*
305-374-3998
305-374-3985 - FAX
E-MAIL DESIGNATION: alexanderrundlet@barzeeflores.com